No. 18-3847, 18-3866

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KENNETH CHAPMAN, ET AL.,
PLAINTIFFS-APPELLEES

v.

TRISTAR PRODUCTS, INC.,
DEFENDANT-APPELLEE

ARIZONA ATTORNEY GENERAL'S OFFICE, ET AL.,
APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLANT AND URGING REVERSAL**

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

GUSTAV W. EYLER
Acting Director

KENDRACK D. LEWIS
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 353-3881
kendrack.lewis@usdoj.gov

*Counsel for the United States*

# TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ................................................................1

SUMMARY OF THE ARGUMENT ..................................................................1

STANDARD OF REVIEW ..................................................................................3

ARGUMENT .......................................................................................................3

I.     The District Court Abused its Discretion by Approving a Settlement that Directed Substantial Fees to Class Counsel and Restrictive Coupons to Class Members...........................................................................................3

     A.     Coupon Settlements that Require Additional Consumer Payments to Defendants Demand Special Scrutiny to Determine the Coupons' Actual Value, If Any. ..............................................................4

     B.     The Proposed Settlement Provides Outsized Attorney's Fees that Dwarf the Non-Monetary Compensation to Unnamed Class Members...................................................................................................10

     C.     The Public Interest Weighs Heavily Against the Tristar Coupon Settlement...............................................................................................13

II.     The District Court Abused its Discretion by Awarding Attorney's Fees Based on the Parties' Inflated, Unsupported Value of the Settlement. ............15

     A.     An Award of Attorney's Fees Must Reflect the Actual Value of Non-Monetary Benefits to Class Members. ..........................................16

     B.     The District Court Overvalued the Restrictive Tristar coupons. ...........18

     C.     The Court's *Gascho* Decision Should be Limited to Class Action Settlements Involving Cash Benefits of Obvious Value Rather than Coupons of Negligible or Illusory Value.......................................22

CONCLUSION...................................................................................................26

**FEDERAL CASES**

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986)..*16*

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) .............................................................. 16

*Cannon v. Ashburn Corp.*, No. CV 16-1452, 2018 WL 1806046 (D.N.J. 2018) .......... 9, 20

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ............................................................... 6

*Galloway v. Kan. City Landsmen, LLC,* No. 11-1020, 2013 U.S. Dist. LEXIS 92650 (W.D. Mo. July 2, 2013)……………………………………………………………………15

*Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) ......................... 18, 25

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ... 3, 18, 20, 22, 24, 25

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................ 16

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008) ..................................... 23

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ............................................ 21

*In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) .................... 24

*In re: Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .......................... 10, 13, 14, 24

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ................................... 7, 18, 25

*In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ......................................... 7

*In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) ................................. 7, 8, 18

*Int'l Union, United Auto. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .............. 13, 14

*Martin v. Trott Law, P.C.*, No. 15-12838, 2018 U.S. Dist. LEXIS 167531 (E.D. Mich. Sept. 28, 2018)……………………………………………………………………21

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ................................. 21

*Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635 (N.D. Ohio 2016) .................... 21

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ....................... 17, 18

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)....................................8, 16, 25

*Strong v. BellSouth Telecom.*, 137 F.3d 844 (5th Cir. 1998) ....................................... 24

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ............ 5, 10

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed.Appx. 496 (6th Cir. 2011)..22, 23

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ...................................... 14

## FEDERAL STATUTES

28 U.S.C. § 517......................................................................................................... 2

28 U.S.C. § 1712 ...........................................................................................5, 18, 25

28 U.S.C. § 1712(b)(1)...........................................................................................16

28 U.S.C. § 1712(e) ........................................................................................4, 6, 12

28 U.S.C § 1712(d).................................................................................................19

28 U.S.C. § 1715 ..................................................................................................... 1

28 U.S.C. § 1715(f)..................................................................................................1

## Rules

Fed. R. Civ. P. 23(e)(2)(A-D) ............................................................................. 10

Fed R. Civ. P. 23(e)(2)......................................................................................... 10

## Other Authorities

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. Rev. 991 (2002)...........................................6

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) .................... 1

Class Action Fairness Act of 2005, S. Rep. 109-14 (2005)................... 1, 5, 12, 15, 17, 25

Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain (2000)...................................................................................................................15

Federal Judicial Center, *Manual for Complex Litigation* (4th ed.) ................................. 14, 25

*Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010)...............6, 9, 17, 20

William B. Rubenstein, *Newberg On Class Actions* (5th ed.) ............................................. 10

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully requests the opportunity to be heard at oral argument. This class action involves issues that affect the relief provided to consumer class members in a coupon settlement. Oral argument will aid the Court by allowing the parties to further explain the issues presented in this appeal and respond to any inquiries raised.

## INTEREST OF THE UNITED STATES

Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court in the United States."  28 U.S.C. § 517.  The Class Action Fairness Act of 2005 ("CAFA") requires class action defendants to notify the Attorney General and state officials of proposed class action settlements, a duty that contemplates a role in the settlement-approval process for the Attorney General.  28 U.S.C. § 1715.  While the CAFA notice provision does not expressly grant specific authority or impose explicit obligations upon federal or state officials, 28 U.S.C. § 1715(f), the Act's legislative history shows that Congress intended the notice provision to enable public officials to "voice concerns if they believe that the class action settlement is not in the best interest of their citizens."  The Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 5 (2005) ("S. Rep.").  Congress expected that CAFA notifications would "provide a check against inequitable settlements" and "deter collusion between class counsel and defendants to craft settlements that do not benefit injured parties."  S. Rep. at 35.  The United States thus offers its views here.

## SUMMARY OF THE ARGUMENT

The settlement in this case, as approved by the district court, pays millions of dollars to class counsel, while giving class members extended warranties of nominal value and coupons that consumers can redeem only by paying the defendant more money to purchase one of its products.  Unsurprisingly, only a tiny fraction of the class

members have claimed these "benefits," and even fewer consumers will ever spend the money required to actually redeem their coupons. Fee-heavy, coupon-based settlements like this one are precisely the sorts of settlements Congress enacted CAFA to curtail. Approval of such settlements is appropriate only where the benefit to class counsel is commensurate with the benefit counsel obtains for the class they represent— rather than simply being based on the number of hours they expended on litigation that generated little or no value for their class-member clients.

The district court abused its discretion in finding the lopsided settlement here to be fair, reasonable, and adequate. The district court then compounded its error in approving the settlement by basing the fee award on erroneous assumptions about the value and redemption rate of the coupons rather than by requiring the parties to present actual evidence that would enable it to make actual fact findings. And moreover, even using the court's own speculative valuation of the coupons, the attorney's fees it approved *still* total more than 50 percent of the settlement's value—a lawyer-takes-most outcome that is contrary to CAFA and difficult to square with the applicable cases even if the Court's assumptions were reasonable, which they were not.

The United States filed a Statement of Interest below urging the district court not to approve this settlement or, if it did, to delay the determination of attorney's fees until after the actual redemption rate of the coupons was known. U.S. Statement of Interest, R. 134, Page ID # 1-15. An amicus brief filed by 18 state attorneys general made similar arguments. While the court seemed to recognize problems with the

2

settlement, it largely dismissed those concerns and came to an unsupportable conclusion. The United States stands by the arguments it made below, and supports the State of Arizona in asking this Court to reverse the district court's decision. The United States also urges the Court to make clear that its holding in *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016), is limited to non-coupon settlements with intrinsic and measurable value.

## STANDARD OF REVIEW

A district court's approval of a class-action settlement and award of attorney's fees are both reviewed for abuse of discretion. *Gascho*, 822 F.3d at 276.

## ARGUMENT

**I.    The District Court Abused its Discretion by Approving a Settlement that Directed Substantial Fees to Class Counsel and Restrictive Coupons to Class Members.**

The district court approved a settlement that would force class members to relinquish all potential claims for personal injury or property damage against the defendant in exchange for extended warranties of nominal value and restrictive coupons that consumers can redeem only by paying additional money to the same company that allegedly harmed them. Confirming that these coupons are essentially worthless, only a tiny number of the class members have claimed them. And although the defendant agreed to provide more than $3 million in cash to settle this case, that money goes to class counsel, named plaintiffs, and administrative costs. This is precisely the sort of

settlement—one where class counsel profit handsomely while unnamed class members get essentially nothing—that CAFA exists to prevent.

The district court's error in approving the settlement was threefold. *First*, it valued the coupons at the total amount of the discount they provided rather than analyze their actual value in the real world—an error that vastly overstated the benefit they provided to class members—while also glossing over the fact that class members can redeem these coupons only by making substantial additional payments to the defendant. *Second*, the district court failed to consider the substantial proposed fee (about $2.3 million to class counsel) as part of its settlement-approval analysis and assess whether that monetary portion of the settlement needed to be allocated partially to the class members surrendering their claims rather than being given entirely to class counsel. *Finally*, the district court failed to give sufficient weight to the strong public interest in rejecting CAFA settlements that provide substantial sums to class counsel while extinguishing the claims of absent class members in exchange for discount coupons of dubious value. For all these reasons, the terms of the proposed settlement are not "fair, reasonable, and adequate for class members," 28 U.S.C. § 1712(e), and the district court abused its discretion in approving it.

**A.    Coupon Settlements that Require Additional Consumer Payments to Defendants Demand Special Scrutiny to Determine the Coupons' Actual Value, If Any.**

Both the text of CAFA and its legislative history reflect particular concern with settlements that provide class members with discount coupons they can redeem only

by making additional purchases from the defendant. *See* 28 U.S.C. § 1712; *see also* S. Rep. 14, 109th Cong., 1st Sess. 27-28 (2005) (CAFA Senate Report or "S. Rep."). As Congress stated expressly in the statutory text, class members often receive little benefit from class actions, "and are sometimes harmed, such as where . . . counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." CAFA § 2(a)(3)(A), 119 Stat. 4 (2005). The Senate Report accompanying CAFA listed numerous examples of abusive coupon settlements, *see* S. Rep. at 15-20, and explained that the problem is coupon settlements often provide no "meaningful recovery to the class members," and instead "simply transfer money from corporations to class counsel." *Id.* at 4. Such settlements are, in other words, in the interest of defendants (who discharge their liability) and class counsel (who pocket the money), but not the actual class members whose claims the settlement extinguishes.

While restrictive coupons often provide little value to the class, they do create the *illusion* of a substantial expenditure, which the defendant and class counsel can then use to justify substantial attorney's fees. Here, for example, the settlement offers discounts of $72.50 for each of the approximately 3.2 million class members who purchased the pressure cookers. But 3.2 million potential $72.50 discounts are plainly not worth their face value of $232,000,000 or anything remotely close to it, just as a newspaper's coupon page is hardly worth hundreds of dollars. That is because, unlike cash, coupons require consumers to spend their own money to realize any benefit and essentially "force[] future business with the defendant." *Synfuel Techs., Inc. v. DHL*

*Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). And coupons like the ones here—which provide roughly 40% off a pressure cooker purchased directly from the defendant for $159 (plus shipping and handling)—are indistinguishable from the sorts of promotions and discounts that manufacturers like the Defendant routinely offer to the general public to attract more business. It is thus for good reason that CAFA requires courts to give particular scrutiny to coupon settlements. 28 U.S.C. § 1712(e); *see also, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 725 (7th Cir. 2014) (coupon settlements are generally "a warning sign of a questionable settlement").

Rather than accept such coupons at face value, a district court must undertake a close examination of their true worth in determining whether the settlement is fair. In valuing the coupons, among the factors courts should consider are (1) whether the coupons are transferable to other consumers, (2) whether a secondary market exists where the coupons could be converted to cash, (3) whether the coupon compares favorably with other bargains generally available, and (4) whether class members would likely redeem the coupons. *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 18 (3d ed. 2010) ("Rothstein et al.") (noting that coupons are a hot-button indicator of "potential unfairness" in a settlement); *see also* Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. Rev. 991, 995 (2002) (restrictions often leave coupons "worthless despite their deceptively high face value").

The less that coupons in a class-action settlement resemble unrestricted cash payments, the less value those coupons hold for consumers.

Applying this framework here makes clear that the coupons at issue are essentially worthless. First, the Tristar coupons are non-transferable. *See, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("[A] coupon settlement is likely to provide less value to class members if . . . the coupons are non-transferable."). Second, they cannot be converted to cash. *See, e.g.*, *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) ("[C]ompensation in kind is worth less than cash of the same nominal value."). Third, the coupons do not allow consumers to capitalize on better prices, sales, or reduced fees that may be offered by third-party retailers. For instance, Amazon.com offers a Tristar 10-quart pressure cooker (similar to the one described in the settlement) for a cheaper price and with free shipping.[1] Instead of taking advantage of such bargains, claimants must select one of just three Tristar products and purchase the chosen item directly from Tristar within 90 days. These combined restrictions make the coupons worth far less than their purported face value. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706 (7th Cir. 2015) (potential for abuse is greatest where the coupons expire soon, are not transferrable, cannot be aggregated,

---

[1] Amazon.com, Power Pressure Cooker XL 10 QT, https://www.amazon.com/Power-Pressure-Cooker-XLQuart/dp/B01BVV07KO?ref_=bl_dp_s_web_14692120011&th=1 (last accessed Jan. 29 2019).

and have value only if class members do business with the defendant); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (finding that "numerous restrictions imposed in the [coupon] settlement agreement" chipped away at the settlement's value).

Not only are the coupons highly restricted, but they require class members to pay the defendant a significant amount of money to realize any benefit. Class members willing to re-engage with Tristar and actually redeem their coupons would have to pay about $117 on top of the coupon for a replacement machine—or $17 *more* than many of them paid for their original machines.[2] Given the various restrictions and required payments, the proffered coupons do not provide any meaningful compensation to class members at all. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d at 706 (coupons that "have modest value compared to the new purchase for which they must be used" can signal an abusive settlement).

---

[2] As the parties explain, "[t]he price range of the Pressure Cookers purchased by the Settlement Class members was approximately $100.00 to $160.00, with the six-quart model that cost $100.00 being by far the highest seller." Plaintiff's Motion for Fees, R. 133, Page ID # 19. Tristar's 10-quart pressure cooker currently costs $159.93 plus $29.99 shipping and handling through the company's website. *See* Exhibit A, https://www.unitycarts.com/_pressure_cooker_PPX10QTWB2/cart.aspx (last accessed Jan. 29, 2019). Therefore, even with the $72.50 coupon, a claimant would need to pay about $117 to purchase a replacement pressure cooker.

By comparison, the six-quart model that most class members originally purchased is currently available on Amazon for just $69.99 with free shipping. *See* Amazon.com, Power Pressure Cooker XL 6 QT, https://www.amazon.com/dp/B00MZZXO4W/ref=twister_B01DP41AJW?_encoding=UTF8&psc=1 (last accessed Jan. 31, 2019).

Confirming as much, class members have shown essentially no interest in claiming the coupons the settlement provides. Out of approximately 3.2 million potential class members, a minuscule 0.4 percent (about 13,000 people) submitted a coupon request. In other words, *more than 99.5 percent of class members* did not perceive the coupons as being valuable or desirable enough to go through the settlement's required exercise of completing a claim form and watching a safety video. The ultimate rate of coupon redemption—*i.e.*, that fraction of the 0.4 percent of class members who claimed coupons who actually follow through on buying a new pressure cooker from Tristar—will undoubtedly be even lower. *See, e.g.*, *Cannon v. Ashburn Corp.*, No. CV 16-1452 (RMB/AMD), 2018 WL 18060646, at *16 (D.N.J. Apr. 17, 2018) (noting that generally in coupon settlements the "claims rate does not equal redemption rate"). The settlement's lack of value for class members is clear. *See* Rothstein et al. at 34 (noting a "reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons").

The district court recognized that the Tristar coupons had "no redeemable cash value, are non-transferrable, expire after ninety days, and can only be used on three Tristar products that must be directly purchased from" Tristar. Opinion & Order, R. 156, Page ID # 13. The court also understood that class members typically "redeem only a small fraction of the coupons available to them." *Id.* at 14. Indeed, the court rejected the parties' assertion that the value of the coupons equaled their face value. *Id.* at 13-14. Yet as part of assessing its fee award, the court nonetheless valued each

claimed coupon at the full $72.50 asserted by the parties. The court also concluded—contrary to common sense and without any supporting evidence—that all 13,174 class members who submitted claims for coupons would actually redeem them, thus assigning the class's portion of the settlement a value of $955,115.[3] *Id.* at 14-15. Rather than dismiss the obvious problems it recognized, the court should have assigned virtually no value to the exceedingly unpopular coupons in its calculation of the settlement's value. The "fairness of [a] settlement must be evaluated primarily based on how it compensates class members," *In re Dry Max Pampers Litig.*, 724 F.3d 713, 720 (6th Cir. 2013) (quoting *Synfuel Techs., Inc.*, 463 F.3d at 654), and the district court here did not correctly perform that primary evaluation.

## B. The Proposed Settlement Provides Outsized Attorney's Fees that Dwarf the Non-Monetary Compensation to Unnamed Class Members.

The problems with coupons and discounts are especially serious when they are part of a settlement that awards a large sum of money to class counsel. In determining whether to approve a settlement as "fair, reasonable, and adequate" under Rule 23(e)(2), a district court must consider the portion of the settlement that will go to attorney's fees. *See, e.g.*, 4 William B. Rubenstein, *Newberg on Class Actions* § 13:61, at 506 (5th ed.

---

[3] The court also noted that the 13,174 class members also had received the one-year warranty extensions, which were worth approximately $5 each, for a total of $65,870 in additional value.

2014) ("If the fees set in the settlement agreement appear unrealistically high, that provision casts doubt on the settlement."). This requirement is explicit in the recent amendments to Rule 23, which took effect on December 1, 2018.[4] Fed. R. Civ. P. 23(e)(2)(A-D). Under Rule 23, courts evaluating a class action settlement must consider whether "the relief provided for the class is adequate, taking into account . . . the terms of any proposed award of attorney's fees." *Id.* at 23(e)(2)(C)(iii). The amended rule makes clear that the relief to the class "is a significant factor in determining the appropriate fee award." Fed R. Civ. P. 23(e)(2), Advisory Committee Note (2018 amendment).

The unfairness of the Tristar settlement is obvious when the dubious discounts provided to class members are compared to the multi-million-dollar cash award it provides to their counsel. The settlement document itself stated only that Tristar would not contest an award of attorney's fees in an "amount within a range agreed to by the Parties." Settlement Agreement, R. 126-1, Page ID # 7. But by the time of the fairness hearing, the district court knew the full outline of the parties' agreements, including the amount of uncontested attorney's fees. The total proposed cash outlay by Tristar came

---

[4] As the Advisory Committee notes, these factors are not meant to "displace any factor" previously articulated by circuit courts. Fed R. Civ. P. 23(e)(2) advisory committee's note (2018 amendment). The goal is "to focus the court and lawyers on the core concerns . . . that should guide the decision whether to approve the proposal." *Id.* While the amended Rule was not yet in effect at the time of the final hearing in this case, the proposals and concepts behind the amendments were well known.

to over $3 million: more than $2.3 million in uncontested attorney's fees, plus almost $900,000 in uncontested administrative costs (along with $30,000 to the named plaintiffs). Not a penny went to the absent class members. As detailed above, the class was left solely with extended warranties and discount coupons giving them the opportunity to spend more money on Tristar products.

CAFA incorporates the "fair, reasonable, and adequate" standard for coupon settlements in Section 1712(e), and that standard also requires consideration of attorney's fees as part of the overall settlement evaluation, separate and apart from the review of fee awards mandated by Section 1712(a)-(c). That is implicit in the text of Section 1712(e) and the accompanying Senate Report clearly explained that "the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fees demand is disproportionate to the level of tangible, non-speculative benefit to the class members." S. Rep. at 32. The Senate Report also states that "[i]n adopting [Section 1712(e)], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members." *Id.*

The district court essentially ignored the outsized attorney's fee award in analyzing the overall reasonableness and fairness of the settlement. Rather than consider the parties' agreed-upon $3.2 million cash payment for fees and costs in assessing whether the settlement was fair, the court summarily stated that "class counsel

have not requested an exorbitant fee amount." Opinion & Order, R. 156, Page ID # 9. But whether or not a particular fee request seems "exorbitant" in the abstract, the reasonableness of fees has to be assessed in the context of the overall settlement. And here, considering the proposed fee award in the context of the settlement makes clear that the settlement is neither fair nor reasonable. The defendant agreed to pay $3.2 million in cash to settle this case; rather than allocate money entirely to class counsel and administrative costs while the absent class members are left with useless coupons and extended warranties, the settlement needed to fairly apportion the cash-value of the suit between the class and its counsel. Because the settlement at issue "benefits class counsel vastly more than it does consumers who comprise the class," *In re Dry Max Pampers*, 724 F.3d at 721, it should not have been approved.

## C. The Public Interest Weighs Heavily Against the Tristar Coupon Settlement.

Despite the lopsided terms of the ultimate agreement between the parties, the district court determined that the proposed settlement was fair and reasonable under the relevant Sixth Circuit factors. Opinion & Order, R. 156, Page ID # 6-7 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).[5] The court found that the case was complex and

---

[5] The Sixth Circuit's class-action rubric comprises seven factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3)

involved extensive discovery, and that the plaintiffs risked losing on the merits. Opinion & Order, R. 156, Page ID # 7-8. The court found no evidence of fraud or collusion between the attorneys, and noted that negotiations as to attorney's fees began only after the parties agreed on the benefits to class members. *Id.* at 8-9. The court emphasized that no class member objected to the settlement, and found that the public interest factor was neutral at worst. *Id.* at 9-10.

The district court assessed the public interest incorrectly. As set forth above, the settlement at issue provides preferential treatment to class counsel "while only perfunctory relief to unnamed class members." *In re Dry Max Pampers*, 724 F.3d at 718 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)) (internal quotation marks omitted). The general social benefit of consumer class action lawsuits does not mean the public interest favors approving every settlement. To the contrary, the public interest requires that courts be especially skeptical of proposals exactly like this one. *See* Fed. Judicial Ctr., Manual for Complex Litigation § 21:61 (4th ed. 2004) (emphasizing that judges should be skeptical of proposed settlements that "grant[] class members illusory nonmonetary benefits, such as discount coupons for more of defendant's product, while granting substantial monetary attorney fee awards").

---

the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Congress enacted CAFA, in part, to address settlements "that offer little—if any—meaningful recovery to the class members and simply transfer money from corporations to class counsel," S. Rep. at 4, and the public interest weighs against approving those sorts of settlements. As one commentator has explained, "[t]he single most important action that judges can take to support the public goals of class action litigation is to reward class action attorneys only for lawsuits that actually accomplish something of value to class members and society." Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 33 (2000); *see also Galloway v. Kansas City Landsmen, LLC*, No. 11-1020, 2013 U.S. Dist. LEXIS 92650, at *4 (W.D. Mo. July 2, 2013) (explaining that while public policy favors settlements, courts must be mindful that once the litigation's adversarial aspect is lost "settling parties frequently make a joint presentation of the benefits of the settlement without significant information about any drawbacks") (internal quotation marks omitted). The district court thus erred by failing to give proper weight to the public interest in rejecting settlements that pay substantial sums to class counsel while providing essentially nothing to the class members they represent.

## II. The District Court Abused its Discretion by Awarding Attorney's Fees Based on the Parties' Inflated, Unsupported Value of the Settlement.

In addition to abusing its discretion in approving the settlement generally, the district court abused its discretion in approving a substantial attorney's fee award that dwarfed the virtually nonexistent value provided to unnamed class members. In cross-

checking class counsel's lodestar fee request, the district court assumed—contrary to common sense and without evidentiary support—that every class member who had requested a coupon would redeem it. The district court then overstated the worth of those unredeemed coupons by accepting counsel's estimate of the coupons' face value without accounting for the coupons' restrictive terms. While district courts have substantial discretion to determine attorney's fees, that discretion is still constrained, particularly when evaluating coupon settlements like this one. On this basis, too, the Court should vacate the decision below and clarify the guardrails that govern attorney's fees in coupon-settlement cases.

### A. An Award of Attorney's Fees Must Reflect the Actual Value of Non-Monetary Benefits to Class Members.

Under CAFA, attorney's fees may be "based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1). But while CAFA allows the use of the lodestar method, the statutory terms "based upon" and "reasonably" show that approving a fee award requires courts to do more than simply award an amount that corresponds to the hours that class counsel worked multiplied by their hourly rate. Rather, the court must award a fee that is reasonable in light of "the degree of success obtained" for the class. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As the Seventh Circuit explained in applying Section 1712(b)(1), "the reasonableness of a fee cannot be assessed in isolation from what it buys." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014).

In evaluating an attorney's fee request in a class-action suit, the district court must therefore address six factors: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Attorney's fee awards must be reasonable under the circumstances, and the first factor—the value of the benefit to the class—is a critical consideration. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). As one court put it, the value of the settlement "is the cornerstone upon which a court must base its award of fees." *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697, 700 (S.D. Ohio 1986).

As explained above, the actual value of a coupon can be difficult to measure. CAFA's legislative history emphasizes that courts "should consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement." S. Rep. at 31. Courts must thus look beyond the parties' assertions of value and determine what, if anything, the coupon is actually worth in real monetary terms. *See also* Rothstein et al. at 33-34 (describing how courts can discern the value of non-monetary benefits like coupons before awarding attorney's fees).

After that, district courts may calculate reasonable attorney's fees in class actions using the lodestar method or the percentage-of-the-fund method. *See Rawlings*, 9 F.3d

at 516.[6]  As this Court has recognized, the lodestar method "better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved."  *Id.*  Because the outcomes of these two methods "can be in tension with each other," district courts have discretion to select the method that better accounts for the particular facts of a case.  *Gascho*, 822 F.3d at 279.  The goal is to "make sure that counsel is fairly compensated for the amount of work done *as well as for the results achieved*."  *Rawlings*, 9 F.3d at 516 (emphasis added).  In many cases, courts use the percentage-of-fund calculation to "cross-check" the overall reasonableness of a lodestar amount.  *See Gascho*, 822 F.3d at 281.  To perform a percentage-of-the-fund analysis, "courts must calculate the ratio between attorney's fees and benefit to the class," which can include the costs of administering the settlement.  *Id.* at 282.

## B.    The District Court Overvalued the Restrictive Tristar coupons.

Here, the district court began with the proposed lodestar figure of about $2.3 million and performed a flawed percentage-of-fund cross-check.  First, the court found

---

[6] There is a circuit split between the Ninth Circuit and certain other Courts of Appeal on whether use of the lodestar method is permissible at all in a coupon settlement case.  *Compare HP Inkjet*, 716 F.3d at 1183–85 *with In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 707 (7th Cir. 2015) (disagreeing with the *HP Inkjet* decision, and holding that "[s]ubsections (a) and (b) [of 28 U.S.C. § 1712] . . . fit together to force a choice between the lodestar method and a percentage of coupons redeemed") *and Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) (agreeing with *Southwest Airlines*).  This Court has not yet examined the question.  The United States assumes for purposes of this filing that the lodestar method is one permissible basis for determining attorney's fees in a coupon settlement, subject to the considerations and limitations discussed herein.

that the restrictive coupons are worth their full face value despite the fact that a $72.50 discount on a $159 product is plainly not worth $72.50 in cash. And second, the court assumed, without any evidentiary basis, that class members would redeem all claimed coupons. These mistakes led to a result untethered to either commonsense or evidence.

As noted above, the court's fee analysis began properly by questioning the parties' assertion that the actual value of the coupons equaled their $72.50 face value. Opinion & Order, R. 156, Page ID # 13. The court noted the restrictive nature of the coupons and correctly stated that a coupon's actual value is likely less than its face value. *Id.* at n.60. The district court also noted that none of the interested parties offered expert opinions "on the actual value of the coupons," even though CAFA allows parties to do so. *Id.* at 13; *see also* 28 U.S.C § 1712(d). Yet, despite identifying these deficiencies, the district court proceeded to ignore them and valued the coupons at their full $72.50 face value in its cross-check. Opinion & Order, R. 156, Page ID # 14-15. For the reasons outlined above, the court's conclusion was wrong.

The district court next counterintuitively assumed—without any evidentiary basis—that all 13,174 claimants would pay Tristar the money necessary to redeem their coupons. *Id.* at 15. As explained above, only 0.4 percent of the 3.2 million potential class members claimed a coupon. It is wildly improbable that every single one of those people will actually spend the $100 or so needed to redeem the coupons; the actual redemption rate is likely to be much lower. *See* p. 7, *supra.* Yet the district court ignored these concerns and simply assumed a 100 percent redemption rate, multiplied the

coupon's overstated face value by the total number of coupons claimed, and then cross-checked the lodestar fee using the resulting amount (about $1 million, including the purported value of the extended warranty) as the actual benefit to the class.[7]  Opinion & Order, R. 156, Page ID # 15.

The district court provided no explanation for these conclusory determinations. As noted in the Federal Judicial Center guide, "[d]etermining the precise value to the class of the rare beneficial coupon settlement . . . calls for hard data on class members' redemption of the coupons."  Rothstein et al. at 18; *Cannon*, 2018 WL 1806046, at *16 (redemption data necessary to determine precise value to the class).  The court had no "hard data" here, and instead relied on the unsubstantiated (and facially implausible) claims of the parties.  And it then approved an attorney's fees figure that was *still* about 57 percent of the settlement's total value on the basis of its unrealistic assumptions. Opinion & Order, R. 156, Page ID # 15.  The district court recognized that figure as "above the norm," but reduced the award by just 15 percent to account for the "limited

---

[7]  The district court also overvalued the claims administration costs.  District courts "may include costs of administration" in determining settlement value to the class.  *Gascho*, 822 F.3d at 282.  Here, Tristar agreed not to contest *up to* $890,000 in claims administration costs.  Opinion & Order, R. 156, Page ID # 4 (emphasis added). Class counsel noted that as of May 14, 2018, the claims administrator had incurred $218,662.42 in costs.  Plaintiff's Motion for Fees, R. 133, Page ID # 24.  Yet three months later, the district court simply counted the full $890,000 as a class benefit, without requesting updated information about the actual administrative expenses incurred.  Opinion & Order, R. 156, Page ID # 15.

value of the benefit produced for the class." *Id.*[8] Even after the reduction, though, class counsel's fees of $1.9 million still accounted for more than 50 percent of the settlement's inflated value—well north of the ordinary range for attorney's fees. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 641 (N.D. Ohio 2016) (noting the benchmark percentage for attorney's fees in the Sixth Circuit is 25 percent, with an ordinary range of 20-30 percent); *Martin v. Trott Law, P.C.*, No. 15-12838, 2018 U.S. Dist. LEXIS 167531, at *25-26 (E.D. Mich. Sept. 28, 2018) (finding attorney's fees of slightly over 33 percent to be well-accepted in complex consumer class actions).

An evidence-based cross-check by the district court would have required a much larger reduction in fees. Rather than accept the coupons at face value, the court should have recognized their negligible worth for the reasons cited above. And rather than assume all claimed coupons would be redeemed, the court should have deferred the award of attorney's fees until after the redemption period. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013) (it is common "to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is

---

[8] The district court found that the other factors outlined by the Sixth Circuit in *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) regarding attorney's fees all weighed in favor of the requested amount. *Id.* at 15 n.68. The court summarized that: (1) the value produced for the class cut against awarding a full lodestar fee; (2) class counsel's hourly rates and time spent were reasonable; (3) class counsel expended considerable resources on a contingency basis with no guarantee of compensation; (4) society has a clear stake in rewarding attorneys who undertake consumer protection cases like this one; (5) the litigation was highly complex; and (6) all parties to the litigation showed considerable skill and have good standing in the legal community. *Id.*

complete."); *see also* Rule 23 (amended), commentary ("In some cases, it will be important to relate the amount of an award of attorney's fees to the expected benefits to the class. One way to address this issue is to defer some or all of the award of attorney's fees until the court is advised of the actual claims rate and results."). By instead forging ahead based on unsupported and flawed assumptions, the district court abused its discretion.

### C. The Court's *Gascho* Decision Should be Limited to Class Action Settlements Involving Cash Benefits of Obvious Value Rather than Coupons of Negligible or Illusory Value.

Partially in response to arguments raised by the government parties, the district court pointed to *Gascho v. Global Fitness Holdings* in its Order, noting that "*Gascho* . . . allows district courts to engage in a case-by-case analysis of how to calculate the value of the benefit to the class." Opinion & Order, R. 156, Page ID # 13 n.61 (citing *Gascho*, 822 F.3d at 286-87). *Gascho* reiterated this Court's prior holdings that a "percentage of the fund cross-check is optional, and we have repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis." *Gascho*, 822 F.3d at 281-82 (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed.Appx. 496, 500-01 (6th Cir. 2011)) (mistake in the district court's percentage-of-fund analysis was not an abuse of discretion because the district court was justified in awarding the

fee based on the lodestar alone).[9] The parties here will likely invoke that language to argue that the errors in the district court's percentage-of-fund analysis were harmless because a cross-check was not required in the first place.

But that would be mistaken. *Gascho* did not involve coupons; it involved an easily measured cash fund with intrinsic value to be divided among class members. *Gascho*, 822 F.3d at 273-74. The district court in *Gascho* used the lodestar method to calculate attorney's fees, and then performed a cross-check using the percentage-of-fund method. *Id.* at 275-76. In valuing the settlement for cross-check purposes, the district court in *Gascho* did not use the actual benefit claimed by the class or the total benefit made available to the class; instead, the court chose a mid-point between those two values. *Id.* On appeal, this Court upheld the district court's methods, finding that "the trial court is entitled to substantial deference" in calculating attorney's fees "because the rationale for the award is predominantly fact-driven." *Id.* at 279 (quoting *Imwalle v. Reliance Med. Prods., Inc.* 515 F.3d 531, 551 (6th Cir. 2008) (internal quotation marks omitted). This Court rejected any "categorical rule" and left "the determination of how to value the benefit provided to the class to a district court's discretion." *Gascho*, 822 F.3d at 286.

_____

[9] The settlement in *Van Horn* also involved easily quantifiable cash benefits to class members. *See Van Horn* 436 Fed.Appx at 498 ("The settlement agreement awarded each class member a maximum of $199.44.")

The wide latitude *Gascho* afforded to district courts depended on there being a tangible, ascertainable, easily quantifiable cash benefit; that discretion cannot be divorced from the much-more-straightforward factual context in which *Gascho* arose. The same rationale does not apply to coupon settlements of dubious value. Indeed, *Gascho* itself recognized as much by noting that the case before it differed from prior cases involving substantial attorney's fees but illusory injunctive relief. *See id.* at 277-78 (distinguishing prior cases as not dispositive because they did "not discuss how to value cash benefits for a class that are secured by the work of class counsel"). The objectors and the dissent in *Gascho* cited two cases—this Court's *In re Dry Max Pampers* decision and the Ninth Circuit's decision in *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011)—in arguing that attorney's fees should be calculated based on the value actually claimed by the class rather than the benefit made available to the class. The *Gascho* majority distinguished both cases on the ground that they involved cashless settlements. *Gascho*, 822 F.3d at 277-78. The *Gascho* majority similarly distinguished the Fifth Circuit's approach in *Strong v. BellSouth Telecom.*, 137 F.3d 844 (5th Cir. 1998), on the ground that *Strong* involved coupons constituting "difficult to access 'phantom' benefits rather than cash." *Gascho*, 822 F.3d at 284-85. Thus, *Gascho* strongly suggests that a lodestar calculation is not sufficient on its own when dealing with often-illusory benefits (like coupons) as opposed to easily quantified benefits (like cash).

Like the cases distinguished in *Gascho*, the facts here involve a settlement that provides no cash to unnamed plaintiffs and requires additional consumer payments.

Lodestar calculations "may produce an unreasonably high award" where, as here, "the value of redeemed coupons is minimal." *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016); *see also HP Inkjet*, 716 F.3d at 1179 ("Indeed, if the legislative history of CAFA clarifies one thing, it is this: the attorney's fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorney's fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class.") (citing S. Rep. at 29-32). As the Seventh Circuit explained in *Redman*—also a coupon case—the number of hours expended by class counsel cannot have controlling weight in determining fees in that circumstance. *Redman*, 768 F.3d at 635; *see also* Fed. Judicial Ctr., Manual for Complex Litigation § 21:61, at 310 (4th ed. 2004) ("[T]he court's task is easiest when class members are all provided cash benefits that are distributed. It is more complicated when class members receive nonmonetary . . . benefits.").

This Court should thus make clear that *Gascho* does not allow heavy emphasis on hours expended when evaluating attorney fee requests in coupon cases like this one. Where a settlement's value is speculative, as with the unpopular and expensive coupons here, a cross-check grounded in hard data is not only useful but legally required. A focus in coupon settlements on the value of benefits actually *redeemed* and provided to class members (instead of hypothetically available) would ground district court fee determinations in facts rather than phantom values. It would lead—as CAFA itself and

the cases applying it counsel—to attorney's fees that are actually commensurate with the results those attorneys achieved for the class members they represent.

## CONCLUSION

For the foregoing reasons, both the district court's approval of the proposed settlement and the court's award of attorney's fees should be reversed, and this case should be remanded with instructions for re-evaluating the settlement and fees.

Respectfully submitted,

Joseph H. Hunt
Assistant Attorney General

James M. Burnham
Deputy Assistant Attorney General

Gustav W. Eyler
Acting Director
Consumer Protection Branch

s/ Kendrack D. Lewis
Kendrack D. Lewis
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 307-6154
kendrack.lewis@usdoj.gov

*Counsel for the United States*

**CERTIFICATE OF COMPLIANCE**

I certify, under Federal Rule of Appellate Procedure 32(a), that the attached

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF

APPELLANT AND URGING REVERSAL was prepared using Word 2016 and

Garamond, 14-point font. This brief contains <u>6166</u> words of proportionately spaced

text.

Date: February 4, 2019

<u>s/ Kendrack D. Lewis</u>
KENDRACK D. LEWIS

Trial Attorney
Consumer Protection Branch

## CERTIFICATE OF SERVICE

I certify that on February 4, 2019, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS AMICUS CURIE IN SUPPORT OF APPELLANT AND URGING REVERSAL with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Kendrack D. Lewis
KENDRACK D. LEWIS

Trial Attorney
Consumer Protection Branch

# EXHIBIT A

  

## SELECT PAYMENT AND QUANTITY

| Includes: 10 Quart Power Pressure Cooker XL and Bonus Items | Select Payment | Select Quantity |
|---|---|---|
| | 1 Payment of $159.93 ⌄  + $29.99 S&H | **OUT OF STOCK** |

## ENTER ZIP CODE

State tax will be added to orders for:

CT, FL, NJ, NV, NY, PA

| *Enter Zip Code/ Postal Code: | 223310 |
|---|---|

## ORDER SUMMARY

| Product Ordered | Quantity | Price | P&H | Item Total |
|---|---|---|---|---|
| | 0 | $0.00 | $0.00 | $0.00 |

**Have a promo code?**

Apply

| | |
|---|---|
| **Subtotal:** | $0.00 |
| **Processing & Handling:** | $0.00 |
| **Tax:** | $0.00 |

**PLEASE ENTER EMAIL ADDRESS**

**\*E-mail:**

**PAYMENT METHOD** - Please enter your payment information below:

**\* Payment Type:**

**\* Credit Card Number:**

Credit Card

**\* Card Validation #:**

Help

**\* Expiration:**

--Month--   --Year--

**SHIPPING ADDRESS**

**\* First Name:**

**\* Last Name:**

**\* Address1:**

**Address2:**

**\* City:**

**\* State:**

**\* Phone:**

☐ Check here if your billing address is different from the shipping address entered above.

**Important:**   Billing Name, Address, and Zip Code must be the same as on your billing statement

☑ By submitting my contact info, I consent to receive marketing messages, updates, offers, and notifications as recurring text messages sent automatically to my mobile phone; agree to the terms, conditions & privacy policy posted at TextRules.US; and understand that my mobile carrier's standard message and data rates may apply. I also understand that I can order without text notifications simply by unchecking the box above and can unsubscribe from text notifications anytime simply by replying STOP.

**\*** Indicates a required field.

Your Order is covered by our 60 Day Money Back Guarantee, Less Processing and Handling, which starts from the day you
receive your shipment.

Standard Delivery Time : 7 - 10 Business Days



<em>Your card will be charged after you click on the 'PROCESS ORDER' button.</em>

TriStar Products Inc., © 2019